# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-107(01) (DWF/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Michael Morris, | |
| Defendant. | |

Laura M. Provinzino and Melinda A. Williams, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Robert D. Richman, Esq., counsel for Defendant.

# INTRODUCTION

This matter is before the Court on Defendant Michael Morris' ("Morris") Motion for New Trial based on ineffective assistance of counsel.[1] (Doc. No. 1280 ("Motion").) The United States of America (the "Government") opposes the Motion. (Doc. No. 1433 ("Govt. Opp.").) For the reasons set forth below, the Court respectfully denies Morris' Motion.

---

[1] On June 11, 2019, Morris filed a related *pro se* motion. (Doc. No. 1173 ("*Pro se Motion*").) Specifically, Morris moved to compel disclosure of all communications related to the plea offers made in his case. (*Id.* at 1.) Morris' *Pro se* Motion is fully encompassed by the proceedings currently before the Court. Accordingly, the *Pro se* Motion is denied as moot.

**BACKGROUND**

The Third Superseding Indictment in the above entitled matter charged Morris with Conspiracy to Commit Sex Trafficking (Count 1), Sex Trafficking by Use of Force, Threats of Force, Fraud, or Coercion (Count 2), Conspiracy to Commit Transportation to Engage in Prostitution (Count 3), Conspiracy to Engage in Money Laundering (Count 4), and Conspiracy to Use a Communication Facility to Promote Prostitution (Count 5). (*See* Doc. No. 830.) All five counts proceeded to trial by jury. On December 12, 2018, the jury returned its verdict, finding Morris guilty of all counts. (Doc. No. 997.) Morris moved for judgment of acquittal on December 21, 2018. (Doc. No. 1007.) The Court denied his motion for judgment of acquittal on February 20, 2019. (Doc. No. 1049.)

In June 2019, Morris alleged that his trial counsel, Robert D. Sicoli ("Sicoli"), was ineffective. (*See* Doc. Nos. 1172-1174.) In light of Morris' allegations, Sicoli moved to withdraw as his counsel. (Doc. No. 1167.) The Court granted Sicoli's motion on July 2, 2019 and appointed new counsel. (Doc. No. 1203.) On September 17, 2019, the Court held an evidentiary hearing on Morris' allegations.[2] (Doc. No. 1350.)

Morris is currently awaiting sentencing; however, sentencing has been postponed pending resolution of his current claim. Morris faces a guideline sentence range of 324 to 405 months with a 15-year mandatory minimum for Count 2.

---

2    Morris, Sicoli, and Morris' cellmate, Alexander Blackwell, testified at the hearing.

**I.     Defendant's Motion**

Morris now moves, pursuant to Fed. R. Crim. P. 33(a), to vacate his convictions on Counts 2, 3, and 5 on the ground that Sicoli failed to communicate to Morris a favorable plea deal ("Deal") that the Government had made. (Motion at 1.) Morris alleges that under the terms of the Deal, the Government agreed that Morris could plead guilty to Counts 1 and 4, and that the Government would dismiss the remaining counts. (*Id.*) Morris contends that had he been properly advised, he would have accepted the Deal and pleaded guilty, in part because the Deal eliminated the prospect of a mandatory minimum 15-year sentence on Count 2. (*Id.*) Accordingly, Morris asks the court to place him back in the position he would have been in "had he not been deprived of effective assistance of counsel and had been able to accept the [G]overnment's [Deal]."[3] (*Id.*)

Morris alleges that he had every incentive to resolve his case by plea; however, "the stumbling block was Count 2, which called for a sentence of 15 years to life." (Doc. No. 1281 ("First Morris Memo.") at 1.) Morris argues that unless the Government agreed to dismiss Count 2, he had no choice but to stand trial. (*Id.*)

**II.    *Pro Se* Filings**

In addition to his *Pro se* Motion, Morris filed a self-styled letter to the Court (Doc. No. 1172 ("Letter"), and a supporting affidavit (Doc. No. 1174 ("Morris Aff.")). In his Letter, Morris stated that "a major issue [ ] came up shortly after my jury trial that ended on December 12, 2018." (Letter at 2.) Morris alleged that during a conversation with

---

[3]     Morris also asked for an evidentiary hearing. (Motion at 2.) The Court held an evidentiary hearing on September 17, 2019. (Doc. No. 1350.)

Sicoli in December 2018, he learned about the Deal for the first time. (*Id.*) Morris also proclaimed his innocence with respect to various aspects of sex trafficking:

> I believe that the trial testimony from Agents in the case for the government show I was not involved in ma-tac or any personal force, threats of force, or fraud or coercion, because there is no evidence that exists where I have. I honestly wish I knew that these ladies were being threatened because if I knew I would have tried to help them. If nothing else, I could have given them advice on what they should do. I always tried to help them with any of their wants or needs as was testified to at trial. There is no way that this was reasonably foreseeable to me.

(Letter at 3-4.) In his Affidavit, Morris reiterated his allegations with respect to the Deal, and asserted more generally that Sicoli failed to inform him about various aspects of the criminal justice system. (Morris Aff. ¶ 6.) Morris also maintained his innocence with respect to sex trafficking:

> I had absolutely no knowledge that the women involved in this case had any pressure or force in the acts they were performing. I was aware that they transferred money to their home country for their families and other reasons, but not under any duress. I also had absolutely no meetings or meaningful discussions with anyone in regards to any type of debt or coercion. Because of the nature of the allegations, I understood that the jury would have potentially found me guilty because of the prostitution that was taking place, and not for the erroneous charges the government was attempting to prove.

(Morris Aff. ¶ 10.)

### III. Evidentiary Hearing

**1. Sicoli's Testimony**

During the evidentiary hearing, Sicoli testified that he had more than 40 in-person meetings with Morris, and that he spent countless hours discussing and reviewing evidence with Morris. (Doc. No. 1376 ("Transcript") at 23, 37.) From June 2017 until

September 21, 2018, Sicoli testified that he met with Morris at least 28 times for a total of 41.7 hours.[4] (*Id.* at 23.)

Sicoli testified further that the Government offered Morris three plea offers, that he communicated each plea offer to Morris, and that Morris rejected all three. (*See id.* at 8-9, 11-13, 18-19.) Sicoli stated that the first offer was communicated via phone call in late summer or early fall of 2018. (*Id.* at 8.) The first offer was to plead guilty to Counts 2 and 4 with a mandatory minimum of 15 years and an advisory sentence of 292 to 365 months. (*Id.* at 8-9.) Sicoli recommended that Morris reject the offer because it would likely result in Morris spending the rest of his life in prison and Morris agreed. (*Id.*)

Sicoli testified that the second offer was in February 2018. (*Id.* at 11.) It was to plead guilty to Counts 2 and 4 with a mandatory minimum of 15 years and an advisory sentence of 235 to 293 months. (*Id.* at 11-13.) The second offer also proposed an opportunity for Morris to proffer with the Government. (*Id.* at 45.) The second offer was also communicated via phone call, and subsequently during a meeting at the U.S. Attorney's Office. (*Id.* at 12-13; Doc. No. 1351-1 ("Govt. Exs."), Ex. 1 ("Second Offer Notes.")

The Deal was offered in September 2018 via two telephone conversations. (Transcript at 18; Govt. Exs., Ex. 4-5 ("Deal Notes"). It was to plead guilty to Count 1 and Count 4 with no mandatory minimum and an advisory sentence of 235 to 293 months. (Transcript at 18-19.) It also included the possibility to proffer and testify. (*Id.*

---

[4] Sicoli testified that in his 30-plus years as a criminal defense attorney, only one other case rivaled Morris' for the level of client involvement. (*Id.* at 37.)

5

at 82.) The Deal was not reduced to writing. (*Id.* at 101.) Sicoli testified that he presented the Deal to Morris on September 21, 2018. (*Id.* at 26.) Sicoli's notes reflect this meeting. (*Id.* at 26; Govt. Exs., Ex. 10 ("Timesheet").) The September 21 meeting with Morris lasted 1.2 hours. (Transcript at 79; Timesheet.) Sicoli testified unequivocally that he is certain that he communicated the Deal to Morris and estimated that the plea discussion took 10 to 15 minutes. (Transcript at 79, 88.)

Sicoli testified that he advised Morris to reject the Deal. (*Id.* at 82.) Sicoli explained that pleading to Count 1 "was a nonstarter" because the advisory guidelines of 235 to 293 months was still well in excess of the 15 year minimum Morris was trying to avoid, and the proffer "was a nonstarter" because Morris did not want to provide anything against "a dear friend."[5] (*Id.* at 78, 83.) Sicoli also testified that Morris continued to maintain his innocence with respect to Counts 1 and 2. (*Id.*) Sicoli stated that because Morris continued to plead his innocence, Sicoli believed it was unlikely that Morris would be able to establish any kind of factual basis to plead guilty to Count 1 or Count 2. (*Id.* at 83.)

Sicoli testified that a primary reason that Morris rejected the pleas was because Morris "consistently said he was innocent." (*Id.* at 22-23.) Sicoli stated that throughout his representation of Morris, Morris maintained his innocence with respect to sex trafficking or any conspiracy to commit sex trafficking. (*Id.* at 23, 43, 45, 47, 52, 74.)

---

[5] Sicoli testified that he did not believe that there were sufficient mitigating circumstances that would lead to a sentence definitely below 15 years. (Transcript at 69.) Because of Morris' age and health, Sicoli stated that he and Morris agreed that a significant sentence was effectively a life sentence. (*Id.* at 40.)

6

Sicoli also testified that based on his discussion with Morris, he believed that there was no time at which Morris would have pleaded to either Count 1 or Count 2. (*Id.* at 41.) Sicoli stated that Morris was optimistic about his chances at trial on Counts 1 and 2 all the way through the testimony of the alleged victims. (*Id.* at 86-87.)

Sicoli stated that it wasn't until after trial when Morris started asking why he didn't get a "better offer."[6] (*Id.* at 87.) Sicoli explained that he reminded Morris of the Deal to plead guilty to Counts 1 and 4, and that Morris alleged it was the first he had heard of it. (*Id.* at 33, 87.) Sicoli testified that Morris seemed sincere when he claimed he had never been told about the Deal and that he seemed genuinely surprised. (*Id.* at 33, 88.) Sicoli speculated that Morris was not lying, but that he simply could not remember the discussion about the Deal.[7] (*Id.* at 88.)

### 2. Morris' Testimony

Morris testified that he first learned of the Deal in December 2018 during a conversation with Sicoli, and that he "started inquiring" about it in February or March 2019. (*Id.* at 105.) Morris testified that he believed Sicoli may have forgotten to mention

---

[6] Sicoli stated "Mr. Morris said that he couldn't understand why the [G]overnment wouldn't give him a plea offer off of the mandatory minimum." (Transcript at 33.)

[7] When Morris testified, he stated that he had no recollection of the second plea offer either. (*Id.* at 183-188.) He subsequently stated that he did remember discussing the second deal, but asserted that he may not have fully understood it. (*Id.*)
   The record reflects that that second offer was memorialized during a hearing before Magistrate Tony N. Leung. (Govt. Exhibits, Ex 3 at 26-27.) During the hearing, Magistrate Judge Leung asked Morris if he had discussed the offer with Sicoli. (*Id.* at 26.) Morris responded to Judge Leung that he and Sicoli had "talked about it." (*Id.* at 27.) Magistrate Judge Leung asked, "And you have had enough time to talk to him about it?" (*Id.*) Morris responded, "Yes." (*Id.*)

7

the Deal to him. (*Id.* at 107.) He stated, "I think Mr. Sicoli's a very honorable person. I think maybe he got sidetracked and didn't mention it to me." (*Id.*) Morris testified further that if Sicoli had presented the Deal to him prior to trial, he would have accepted it because it dropped the mandatory minimum and "let the Judge have the discretion to go lower than [ ] the guidelines." (*Id.* at 108.)

Morris also testified that he understood that in order to plead guilty, he would have to admit that he was guilty and that there were facts that made him guilty of the crimes he pleaded to. (*Id.* at 108.) When his attorney asked Morris "if he was a part of an international organization that was involved with sex trafficking," though, Morris said, "No." (*Id.*) Morris' attorney clarified, "No, you were not part of an organization? My question is, were you a part of an organization that trafficked women for commercial sex internationally? Were you a part of that organization?" (*Id.*) Morris responded, "I guess I was, yes." Morris also conceded that he continuously maintained his innocence to both the Court and to Sicoli. (*Id.* at 121.) Morris then unequivocally declared his innocence with respect to Count 2, but stated that "[he] should have known about conspiracy laws" with respect to Count 1. (*Id.* at 122.) Morris later explained that "[he] had knowledge of coercion, yes. But never did [he] coerce anybody." (*Id.* at 138.) Morris testified further that he used the proceeds of the sex trafficking for financial transactions and that he assisted the victims to send money back to Thailand. (*Id.* at 111, 174-75.)

Morris also testified that in the weeks prior to trial, he had regular conversations with his roommate, Alexander Blackwell ("Blackwell"), about the fact that he needed to

get a plea agreement that would drop Count 2. (*Id.* at 112-113.) Morris stated that he discussed all the plea offers with Blackwell. (*Id.* at 113.)

### 3. Blackwell's Testimony

Blackwell testified that he was Morris' roommate from February 2018 to July 2018, and again beginning on October 16, 2018. (*Id.* at 216.) Blackwell stated that he and Morris spoke regularly about the status of Morris' case, and that Morris told him he would have to go to trial unless he got a plea offer. (*Id.* at 217.) Blackwell testified that Morris was particularly worried about Count 2 which carried a mandatory minimum of 15 years. (*Id.* at 218.) Blackwell also testified that when he became Morris' roommate again on October 16, 2018, the first thing they discussed was whether Morris had finally received an offer. (*Id.*) Blackwell stated that Morris told him the Government "hadn't made any other offer."[8] (*Id.*)

## DISCUSSION

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 686 (1984). The Sixth Amendment Right extends to the plea-bargaining process. *See Missouri v. Frye*, 566 U.S. 134, 138 (2012). "As a general rule, Defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." (*Id.* at 145.)

---

[8] Blackwell also testified that Morris "pretty much kept stating that he wasn't involved or knowingly involved in any type of sex trafficking or anything like that." (Transcript at 234.)

9

Generally speaking, to prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and, (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 694. A "reasonable probability" requires "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Judicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption" of competence. *Strickland*, 466 U.S. at 689.

With respect to plea negotiations, Morris must demonstrate that but for the ineffective assistance of counsel, there is a reasonable probability that: (1) he would have accepted the Deal; (2) the Court would have accepted the plea; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

A defendant who maintains his innocence throughout the criminal process, but later alleges that he would have accepted a plea usually cannot show prejudice under *Strickland*. *See Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003); *see also United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998) ("Even if counsel's performance were somehow inadequate, [defendant] failed to establish that there was any reasonable probability that he would have acknowledged his guilt had he been properly advised about the risks of trial"); *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir.

1995) (denying relief where record was "barren" of any indication the defendant would have admitted his guilt prior to trial).

Morris argues that Sicoli was ineffective because "the weight of the evidence supports the conclusion that Mr. Sicoli failed to communicate the [Deal], as he was required to do." (Doc. No. 1479 ("Sec. Morris Memo." at 8.) Morris contends that there is insufficient documentary evidence to support Sicoli's claim that he discussed the Deal with Morris. (*Id.* at 11.) Morris suggests that Sicoli simply forgot to mention a Deal that he was confident his client would reject. (*Id.* at 12-13.)

Morris argues further that "the evidence establishes a better than negligible chance that [he] was prejudiced by the loss of the opportunity to accept the favorable plea offer." (*Id.* at 24, 30-32.) He contends that by virtue of the three additional convictions, as opposed to pleading guilty to just Counts 1 and 4, there is sufficient prejudice. (*Id.* at 32.) Notwithstanding, he contends that the reduced advisory guidelines and no mandatory minimum also create prejudice. (*Id*. at 31-32.)

Morris also asserts that the parties and the Court would have accepted the Deal. (*Id.*) He contends that the Government had an interest in reaching a mutually agreeable resolution, and that "there was a better than negligible chance that the parties would have finalized the [Deal]." (*Id.* at 26.) Morris also claims that he would have presented a sufficient factual predicate to plead guilty to Counts 1 and 4. (*Id.*) Morris contends that the Government is unable to point to any element of either Count 1 or Count 4 that he has refused to admit. (*Id.* at 28.) Morris claims that he had a strong incentive to accept the Deal because it was the only way: (1) to avoid the mandatory minimum 15-year

11

sentence; (2) the Court could have taken into consideration his health and age; and (3) the Court could have considered an alternative base level offense for conspiracy. (*Id.*)

To overcome skepticism about his post-conviction testimony, Morris argues that "there is substantial objective evidence that had [he] been told about the plea to offer to Counts 1 and 4, he would have taken it." (*Id.* at 29.) Specifically, he cites to Blackwell's testimony and to the disparity between his actual sentence exposure and that in the uncommunicated Deal. (*Id.*)

The Government argues that the record clearly reflects that Sicoli communicated the Deal to Morris, and that Morris rejected it.[9] The Government cites to Sicoli's unequivocal certainty that he communicated the Deal to Morris, and to his Deal Notes and Timesheet. (Govt. Opp. at 29.) The Government also argues that Morris' testimony was self-serving, inconsistent, and "one last desperate attempt by Morris to escape—or in this case minimize—punishment for his crimes." (*Id.*) The Government further contends that Morris' admissions of guilt are a new development—that he was still maintaining his innocence in his June 2019 filings. (*Id.* at 30.)

Moreover, the Government argues that Morris cannot establish prejudice. (*Id.* at 30-31.) The Government first contends that Morris would not have accepted the Deal because he consistently maintained his innocence on all sex trafficking charges

---

[9] As a preliminary matter, the Government contends that Sicoli had no duty to communicate the Deal to Morris because it did not amount to a formal plea offer. (Govt. Opp. at 23-28.) The Court need not address this argument because whether or not the Deal was a formal plea, there is insufficient evidence to support any failure of communication.

throughout the criminal process. (*Id.* at 31-34.) The Government also claims that based on Morris' own statements in his affidavit and his testimony, there is "simply no way Morris could have established under oath the factual basis for the [Deal]." (*Id* at 34-36.) The Government contends that Morris' statements reflect that he could not have pleaded guilty because he did not believe he was guilty. (*Id.* at 36.)

Finally, the Government argues that Morris cannot show that he would have received a better sentence under the Deal than the sentence he now faces. (*Id.* at 36-37.) The Government claims that Morris and Sicoli understood throughout the case that the 15-year mandatory minimum meant little because the Court was unlikely to give Morris a sentence under 15 years, whether or not the mandatory minimum was in place.[10] (*Id.* at 36-37.) Further, the Government contends that but for the three-point departure for acceptance of responsibility, Morris now faces the same guidelines that he would have faced under the final plea offer. (*Id.* at 37.) The Government also argues that aside from his "refusal to accept responsibility and recent perjury," Morris has failed to articulate why there is a reasonable probability that the Deal would have resulted in a sentence less severe than the sentence he now faces.[11] (*Id.*)

After a careful review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court finds

---

[10] The Government points to the lack of mitigating factors which could have reduced Morris' sentence. (Govt. Opp. at 37.)

[11] The Government also raises procedural opposition to Morris' motion. As discussed below, Morris' motion fails on the merits. Accordingly, the Court does not address the Government's procedural arguments.

13

that Morris has failed to establish a claim of ineffective assistance of counsel. The record simply does not support Morris' allegation that Sicoli's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687.

Sicoli unequivocally stated his certainty that he communicated the Deal to Morris. The Deal Notes and Timesheet also reflect a meeting with Morris that corroborates Sicoli's memory. While Morris contends that the Deal Notes do not contain sufficient documentary evidence that the Deal was discussed, there is no specific requirement what an attorney must or must not write down. The record reflects that a meeting did occur when Sicoli said it did, and that Sicoli specifically recalled discussing the Deal. Morris' allegation fails to overcome the highly deferential scrutiny and strong presumption of Sicoli's competence or to support any theory that Sicoli simply forgot to mention the Deal. *Id.* at 689. Blackwell's testimony does not alter the Court's analysis. Notably, Blackwell was not incarcerated with Morris at the time of the Deal, and his testimony was based only on his belief that because Morris did not mention the Deal to him, Morris must have been unaware of the Deal himself.

Even if Sicoli's performance did fall below an objective standard of reasonableness, the Court finds that there is insufficient probability that, but for Sicoli's alleged error, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Specifically, the Court finds that there is an insufficient factual basis to establish that Morris would have pleaded guilty to Count 1 or Count 2, or to establish that the Court would have accepted such a plea. The record reflects that as late as June 2019, Morris continuously proclaimed to this Court, to Sicoli, and even to Blackwell that he

14

was innocent with respect to sex trafficking. Accordingly, Morris fails to establish that but for Sicoli's alleged failure to communicate the Deal, the result of the proceedings would have been different. In short, the Court finds that Morris' claim of ineffective assistance fails both prongs of the standard set forth in *Strickland*. Therefore, the Court respectfully denies Morris' Motion.

## CONCLUSION

The Court finds that Morris has failed to establish that Sicoli's performance fell below an objective standard of reasonableness. The record simply does not support Morris' theory that Sicoli inadvertently or otherwise failed to communicate the Deal to Morris. Even if Sicoli's performance did fall below an objective standard of reasonableness, the Court finds it unlikely that the result of the proceeding would have been different because Morris continuously maintained his innocence. Accordingly, the Court denies Morris' Motion.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Michael Morris' Motion for New Trial based on ineffective assistance of counsel (Doc. No. [1280]) is respectfully **DENIED**. **IT IS FURTHER ORDERED** that Morris' *Pro se* Motion (Doc. No. [1173]) is **DENIED AS MOOT.**

Dated: December 5, 2019          s/Donovan W. Frank
                                                     DONOVAN W. FRANK
                                                     United States District Judge